JAMES B. NORRIS, ADM'OR. OF JEREMIAH PITMAN, COMPL'T. VS. JESSE HAM AND W. A. PITMAN, DEF'TS.

*In Equity—Motion to dissolve Injunction.*

*In Equity*, the payment by, or the release and discharge of *one* joint debtor, will not operate as a discharge of the debt as to *all*, unless the intention of the parties and the justice of the case require such a construction of the payment.

A surety who pays the debt, is entitled to be substituted in the place of the creditor, as to all the security or means possessed by him, against the principal debtor, and all the co-sureties.

A judgment creditor who has given indulgence to his debtor, for 1, 2, and 3 years, upon a mortgage being executed by a third person to secure the payment of such judgment, has a right to proceed on his judgment to collect the instalments as they become due.

If a specific consideration be mentioned in a deed, proof of another consideration inconsistent with that mentioned, is not admissible.

But under the words "divers good and sufficient considerations," any sufficient consideration may be shewn.

## By DAVIES, Judge.

THE bill in this case seeks to enjoin the defendants, from proceeding at law on a judgment, recovered by *Jesse Ham* against the intestate *Jeremiah Pitman*, in his life time, and which has been assigned to the other defendant, *W. A. Pitman*, and prays to have satisfaction entered on the judgment.

The facts disclosed by the bill and answers are, that one *Thomas Garnett* and *Jeremiah Pitman*, in his life time, made their promissory note, payable to *Jesse Ham*, for a debt due to him by *Garnett*. On this note judgments were recovered by *Ham* against *Garnett*, in the county of Chatham, and against *Pitman*, in the county of Putnam. *Pitman* being pressed for the payment of the judgment against him, made an arrangement with *Ham* on the 25th October, 1825, by which the judgment against *Garnett* was assigned to him, and an indulgence was given to him for one, two, and three years, for the payment of *Ham's* judgment against him, in consideration of which, *W. A. Pitman* executed a mort-

gage on six negroes to secure the payment. After the death of *Jeremiah Pitman* in September, 1828, *Ham* pressed *W. A. Pitman* for the payment of the judgment, and he pointed out two tracts of land as the property of *Jeremiah Pitman* for this purpose, and at the same time, he was informed by *Ham*, that the mortgage which he held would be foreclosed, for the payment of any balance which might remain due on the judgment, after the sale of the land; in consequence of which, *W. A. Pitman* determined to pay the judgment, which he accordingly did, upon *Ham's* agreeing to give him the use of it for the purpose of indemnifying himself. *W. A. Pitman* having pointed out the land, it was sold in February, 1828, for seventy dollars, he being the purchaser. It appears that after the recovery of *Ham's* judgment against *Pitman*, he had made a voluntary conveyance of his land to *W. A. Pitman*, by whom it was sold to one *Keating*, for fifteen hundred and eighty dollars, payable at distant periods by instalments, and promissory notes were given for the amount. These notes, *W. A. Pitman* says, were delivered by him to his father *Jeremiah Pitman*, and at his death they fell into the hands of his widow, who delivered them up to *Keating* upon his executing to her a quit claim of the land. The circumstances connected with this land are by no means satisfactorily explained, and present the most embarrassing feature in the case. *W. A. Pitman* receives a voluntary conveyance of the land from his father, makes a sale of it for $1580—and then delivers the notes to him. These notes are given up to *Keating* by the widow, upon his executing to her a quit claim, and the titles which were executed by *W. A. Pitman* are delivered to him and destroyed, he then living upon the land as his father's property, and becomes the purchaser for seventy dollars. There seems to be something wrong in the transaction, and an injury has been done to the estate of *Jeremiah Pitman*, but to whom the error is imputable, or who is liable for the injury cannot now be determined, since there is nothing in the bill which will enable this Court to afford re-

dress. Mrs. *Pitman* is unquestionably liable to her husband's estate for the assets which she has appropriated improperly, and if, as I believe, must be the case, *Keating* knew at the time he entered into the contract with Mrs. *Pitman*, that he was contracting with her for that which did not belong to her, but to her husband's estate, he may yet be made liable to the administrator. And if the sale of the land at so inadequate a price was effected by the fraud or misrepresentations of *W. A. Pitman*, it is possible that there are means by which he may be made to account for it at its full value. But I must decide the question now submitted for consideration upon the bill and answer only. It is contended that by the assignment of the judgment against *Garnett*, and the receipt of the amount by *Pitman*, the assignee, *Ham* was satisfied as to that judgment; and that a payment by one of several joint promissors or obligors, discharges the debt as to all. This is the legal principle, but in equity it is subject to many and great modifications. There the principle is this, the effect and operation of a release or discharge of one, will not be extended beyond the clear intention of the parties and the justice of the case. (6 *John.* Chan. 242, *Kerby* vs. *Taylor*.) What were the circumstances of this case, and what was the intention of the parties? *Ham* never received payment of either of the two judgments, until he received the amount of the judgment against *Jeremiah Pitman* from *W. A. Pitman*. If he had been paid by *Garnett*, it would have operated as satisfaction on both judgments, and there would have been an end of the transaction. If he had been paid by *Pitman*, both judgments would have been satisfied as to *Ham*, but *Pitman* would have had a claim to indemnity against *Garnett*. *Ham* having judgment both against *Pitman* and *Garnett*, the latter of whom was the principal debtor, and the other his surety, transfers the judgment against *Garnett* to *Pitman* upon receiving the mortgage from *W. A. Pitman*, thereby exchanging one security for another. And this was a contract which equity would enforce, for the transfer of the judgment against *Garnett* to *Pitman*, was

only what *Pitman* could have had a right to claim if he had paid the judgment against himself; and it was the same thing, if instead of paying it, he gave suċh security as *Ham* was satisfied with.  The surety who pays the debt is entitled to be substituted in the place of the creditor as to all the security or means possessed by the creditor to enforce payment of the principal debtor, (4 *John.* Chan. Rep. 129, *Hayes* vs. *Ward,*) and the same principle is applicable to co-securities in relation to contribution.  Co-securities in a bond have a right to call on each other to contribute to pay the debt of the principal who is insolvent, and to have the benefit of the judgment obtained by the creditor against them all, though satisfaction had been entered up on the judgment, so as to let them stand as judgment creditors against one of the co-securities, who was dead and insolvent, but whose estate could pay his proportion of the debt if considered a judgment debt.  (1 *Dessaus.* 409, *Burrows*, et. al. vs. *McWhann*, et. al.) If therefore *Pitman*, the surety, had paid the debt, he could have claimed from *Ham* the benefit of the judgment against *Garnett*, for the purpose of indemnifying himself; and if he gave him the use of the judgment for this purpose without being paid, but merely on receiving security, it does not well become *Pitman's* legal representative to complain of it.  Again, it is said that the mortgage given by *W. A. Pitman*, had the effect to suspend the operation of the judgment until the expiration of the time limited for the payment of the last instalment in December, 1828.  But it seems to me, that when any one instalment became due, *Ham* had a right to proceed on his judgment for so much; and in March, 1828, when the levy was made, two instalments were due, except four hundred dollars, which had been paid by *Jeremiah Pitman*.  It is objected also, that *W. A. Pitman* pointed out the land for levy on the 22d December, 1827, when in fact he had only paid the judgment to *Ham* on the 27th December, 1827. But he had executed the mortgage on the 21st October, 1825, and then stood in the place of a surety, and was justified in seeking

[Norris vs. Ham, et. al.]

to obtain payment by means of his father's property, rather than sacrifice his own.  It is also objected, that the deed of assignment from *Ham* to *W. A. Pitman* is without consideration; but it seems to me a very adequate consideration is shewn, and the principle on this subject is, I think, this : if a specific consideration be mentioned in the deed, you may not be allowed to shew another consideration inconsistent with that mentioned, but under the words " divers good causes and considerations," you may shew any sufficient consideration.  It appears to me, upon the whole view of the case, that the answers contain a sufficient defence to the case made by the bill, and deny the equity of it, and that the injunction must be dissolved.  (*Eden* on Injunctions, 86. 1 *John.* Chan. Rep. 211, *Hoffman* vs. *Livingston.*)  The bill was filed in March, 1828; and an injunction granted.  The first answers were filed in May, 1828, and the injunction continued upon exceptions.  The amended answers were filed on the 23d August, 1828.  There can therefore be no ground for continuing the injunction.  It has been suggested that there was a mistake in calculating the amount due on the execution when the payment was made by *W. A. Pitman* to *Ham.*  This does not affect the case, because *W. A. Pitman* can only obtain the amount of the judgment without regard to what he paid for it; if he paid too much it was his own fault, and he must bear the loss.  But the four hundred dollars paid by *Jeremiah Pitman* and which are credited on the mortgage, are not, as I perceive, credited on the judgment.

It is *ordered*, that the injunction be dissolved upon the defendant *W. A. Pitman's* crediting on the executions the two sums of two hundred dollars which were paid by *Jeremiah Pitman*, in his life time, as of the days on which they were paid respectively, as appears from the credits given on the mortgage.

Jno. C. Nicoll, D'Lyon & De La Motta, for complainant—M. Sheftall, Senr., for defendant.